Opinion delivered June 13, 1888.

No. 6143.

W. H. HOWARD *v.* THE STATE.

1. CHARGE OF THE COURT.—EXCEPTIONS should point out specifically the objections urged to a charge of the court; otherwise such charge will be revised only for fundamental error.
2. THEFT—INTENT—FACT CASE. See the statement of the case for evidence *held* insufficient to support a conviction for theft, because it fails to show the necessary fraudulent intent in the taking of the property.

APPEAL from the District Court of Llano. Tried below before the Hon. A. W. Moursund.

The conviction in this case was for the theft of a horse, and the penalty assessed was a term of five years in the penitentiary.

F. J. Bagley was the first witness for the State. He testified

that in January, 1886, he lost a certain iron gray or bluish gray five year old stallion, branded EC on the left shoulder. He got that animal when a year old, from the defendant, in a trade. Defendant gave the witness range possession of the animal at the time of the trade, the range being in Llano county. The witness first traded with the defendant for a two year old stallion on the range, which stallion the defendant told him was a bay or dark brown animal. The witness made frequent and diligent search over the range for the bay or dark brown stallion, and made frequent inquiry of people living on the range for him, but could never find nor hear of such animal. He heard of a filly suiting the color and age. He reported his inability to find the bay stallion on the range to the defendant, and also the fact that he had heard of a blue gray yearling stallion on the range which belonged to defendant, and which he proposed to accept in the stead of the bay. The blue gray yearling was then in the EC left shoulder brand. Defendant consented, with the proviso that the witness would take range delivery; to which the witness agreed. In August, 1883, the witness found the gray yearling on the range near Blue Springs, in Llano county, and took him up and broke him to the saddle. The said animal was then about two years old. He kept the animal up about six weeks and then turned him on the range with other horses. The stallion stayed on that range about a week and then went back to his old range, which was some seven or eight miles distant from witness's house. He saw that animal on the said range during the following spring, but did not take it up. He subsequently made unsuccessful search for the animal, and finally in 1886 he learned that it was in the possession of the defendant. The witness then went to the defendant and told him that he had been informed that defendant had been handling the said blue gray stallion. Defendant denied that he had been doing so, but said that he had employed Monte Fraser to get up and break the horse that he had first sold to witness, which said horse he had traded to R. C. Waller, who lived about two and a half miles from witness. To this statement the witness replied: "You could not have made that mistake, because the first horse you let me have you described as being a *dark bay or a brown,* and the horse which I understand you have taken up and traded to Waller is a blue iron gray." Witness then insisted that the defendant should pay him for the horse. Defendant replied that he would see Waller and pay witness half the value of the horse. Witness

declined to receive the half value of the horse, and insisted on the full value, which the defendant did not agree to pay, nor never had paid witness. Witness had never seen the iron gray horse since it was taken up and traded to Waller by defendant. He did not consent to the taking of said horse by Fraser, defendant or anybody else.

Frank Freeman testified for the State, that he lived near Blue Springs, in Llano county, and knew the horse defendant was charged with stealing. He also knew the mother of the said horse, and her other colt, a bay filly, which was a yearling at the birth of the gray horse. The mare and the two colts were in the EC brand, known as the Caviness brand. The said Caviness, now deceased, was the father-in-law of defendant. The horse mentioned in the indictment was the only blue or iron gray colt in the EC brand that ever, so far as witness knew, ran in the Blue Springs neighborhood. On his cross examination the witness said that Monte Fraser penned the animal described in this indictment in the witness's pen, and said that he did so under a contract to break him for the defendant. The mare and two colts were understood throughout the neighborhood to be the property of the defendant, but witness had heard Bagley ask about and claim the iron gray stallion. The witness, on one accasion after the horse was penned at his house, saw the animal hitched at the Cherokee Creek Village. Some time after Fraser took up the said horse Bagley met witness and inquired about the horse and claimed him, and witness told him that Fraser had taken up the horse to break for the defendant. On the occasion referred to by witness, Fraser roped the horse in the pen. The horse pulled on the rope but little and "pitched" but two or three times when Fraser got on him. Witness had never seen nor heard of that horse on the range since Fraser took him up.

N. B. Freeman testified, for the State, that he knew the iron or blue gray stallion described in the indictment, when, as a colt, in the EC brand, it ran on the range about Blue Springs. That was eight or nine years ago. He had never known a similar horse on that range. The mother of the bay stallion had a bay filly colt, a year older than the stallion. Witness once saw an iron gray stallion which Monte Fraser rode to his, witness's, house, but witness did not observe the brand of that horse, and could not say that it was the EC stallion. It was known in the neighborhood that the EC brand of horses was claimed by the defendant and his father-in-law, Caviness. The witness

had never seen the EC gray stallion on the range since the day Fraser rode a gray stallion to his house, as stated.

The State rested.

Mary A. Howard, wife of defendant, was his first witness. She testified that the old gray mare and her two colts were the only horses owned by witness and defendant that ranged at or near Blue Springs, in Llano county. Those animals were given to the witness by her father, E. Caveness. Each of the said animals was gray in color, there being no bay among them. Some time in August, 1885, Monte Fraser brought to the witness's house the oldest of the two gray colts. Fraser broke the said colt, and defendant, after keeping him about four months, traded him to R. C. Waller. During the said four months preceding its sale to Waller, the defendant kept and claimed that colt openly and publicly, and rode it on and over the public roads to town, to church, and wherever else he had to go. Defendant first traded the colt to Bagley, and afterwards gave Bagley the younger colt in the place of it, Bagley reporting that he could not find this colt. Both of the mare's colts were gray, and the mare never gave birth to a bay horse colt, nor did witness or defendant own a bay horse.

Elijah Estep testified, for the defense, that he lived in San Saba county, Texas, and knew the defendant's old gray EC mare and her two colts. He first saw the blue or iron gray stallion in April, 1885, when it looked to be three or four years old. Witness, and the prosecuting witness, Bagley, were afterwards at the defendant's house, when Fraser had that horse at the said house. Bagley heard the conversation which ensued about the said horse, but made no manner of claim to him. That horse was traded by defendant to Waller, and by Waller to Yearwood, and by Yearwood to Vickers, and by Vickers to Anderson, who took the said horse to Edwards county in 1887. Defendant rode the horse about the neighborhood openly and publicly before trading him to Waller.

Tobe Howard testified, for the defense, that he was the son of the defendant, but knew nothing about the trades of the defendant with Bagley, except what he learned from the defendant. He lived with defendant and was about home pretty much all of the time during the spring and summer of 1885, and was there when Monte Fraser brought the iron gray stallion involved in this prosecution to the house. So far as he knew or ever heard of, neither Joe Estep nor T. J. Bagley were ever at the

defendant's house while Fraser had the said horse at said house. To the witness's knowledge the defendant, before he traded the said horse to Bagley, frequently rode him openly and publicly about the neighborhood, to church and to town, but he never heard of the said horse being ridden by the defendant or other person to Babyhead, in which village T. J. Bagley was a merchant. Until the horse was traded to Waller it was kept, either hoppled or staked in the defendant's forty acre field, which was near the public road.

M. L. Montgomery testified, for the defense, that he went to T. J. Bagley's house in the spring of 1883, to get some corn he had bought from said Bagley, and saw a smutty gray, bald faced stallion colt in the yard, which Bagley told him he had gotten from defendant in a trade. Witness knew the animal traded by defendant to Waller, which animal was a blue or iron gray stallion. It was not the animal pointed out to witness by Bagley as the one he bought from the defendant.

G. W. Smith testified, for the defense, that he was twice at Bagley's house in August, 1883, at both of which times Bagley called witness's attention to a bald faced, smutty gray colt then in his yard, which he said he got from the defendant. In 1886 the witness saw and examined the horse traded by defendant to Waller. That horse was of a much bluer gray than the one he saw in Bagley's yard three years before, and was not, in witness's opinion, the same horse, though it looked like the same stock.

T. J. Bagley testified, for the State, in rebuttal, that he never, at any time, visited defendant's house with Joe [Elijah?] Estep. He was never at defendant's house when Fraser was there with an iron gray or any other kind of horse. He knew nothing about his horse having been taken up by either Fraser or defendant until long after it was traded by defendant to Waller. He never exhibited the horse he got from defendant to Montgomery. He had no corn to sell when he had the horse up. There was no truth in Montgomery's statement.

*A. D. McGinness*, for the appellant.

*W. L. Davidson*, Assistant Attorney General, for the State.

WILLSON, JUDGE. We find no material error in the charge of the court, and there is no bill of exceptions in the record specifying any errors in the charge.

As presented in the record; the evidence does not, in our opinion, sustain the conviction.  It is sufficient to establish that the defendant took a horse belonging to Bagley, as charged in the indictment; but it does not establish that such taking was accompanied by a *fraudulent* intent on the part of the defendant.  As we view the evidence, it rebuts the allegation of fraudulent intent.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*